



**U.S. Department of Justice**

*United States Attorney District of Maryland Northern Division*

---

*Rod J. Rosenstein*
*United States Attorney*

*Brandis Marsh*
*Special Assistant United States Attorney*

*36 South Charles Street*
*Fourth Floor*
*Baltimore, Maryland 21201*

*DIRECT: 410-209-4897*
*MAIN: 410-209-4800*
*FAX: 410-962-3124*
*TTY/TDD: 410-962-4462*

August 30, 2016

Gerald C. Ruter, Esq.
8601 LaSalle Road
Suite 102
Towson, MD 21286

    Re:   <u>United States v. Scott Pinder</u>
           Crim. No. JFM-15-0193

Dear Mr. Ruter:

    This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. The terms of the agreement are as follows:

<u>Offense of Conviction</u>

    1.    The Defendant agrees to plead guilty to Count One of the Indictment now pending against him, which charges him with conspiracy to distribute and possess with the intent to distribute 28 grams or more of cocaine base, in violation of 21 U.S.C. § 846. The Defendant admits that he is, in fact, guilty of this offense and will so advise the Court.

<u>Elements of the Offense</u>

    2.    The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

        a.    Between in or about the month of January 2014 and October 2014, in the District of Maryland, an agreement existed between two or more persons to violate the federal drug laws by possessing with the intent to distribute a mixture and substance containing a detectable amount of cocaine base, a Schedule II controlled substance;

        b.    The amount of the controlled substance exceeded 28 grams;

1

   c.  The Defendant knowingly joined in that agreement.

### Penalties

3. The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: for a violation of 21 U.S.C. § 846, the maximum sentence is forty years imprisonment and a mandatory minimum of five years imprisonment, a period of supervised release of at least four years, and no more than five years. and a fine of $5,000,000. In addition, the Defendant must pay $100 per count as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

### Waiver of Rights

4. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

   a.  If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

   b.  If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

   c.  If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

       witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

d.     The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

e.     If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.     By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

g.     If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

h.     By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status.

## Advisory Sentencing Guidelines Apply

5.     The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

3

Factual and Advisory Guidelines Stipulation

6.  This Office and the Defendant understand, agree and stipulate to the following Statement of Facts, which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

   a.  **Statement of Facts**

   Beginning at least as early as June 1, 2014 and continuing through September 2014, the Defendant, Scott Pinder, conspired with others, including those defendants named in the Indictment, to distribute quantities of cocaine base in Baltimore, Maryland. At various times between July and August of 2014, the Drug Enforcement Agency (DEA) obtained authorization to intercept the wire and electronic communications of Cameron Washington, coconspirator Bruce Brooks, and other coconspirators. During these time periods, the Defendant was intercepted discussing the distribution of cocaine base. *SCP 7/13/17 /a named co-conspirator SP*

   At various times during the conspiracy, the Defendant would meet with co-conspirators, and others, to obtain quantities of money derived from the sale of cocaine. The Defendant would hold conversations and meet with ▒▒▒▒ to discuss the distribution activities of his street distributors. At various times between January and July of 2014, the Drug Enforcement Agency obtained authorization to intercept the communications over the cellular telephones of Bruce Brooks and Cameron Washington. During these time periods, the Defendant was intercepted discussing the distribution of cocaine. On numerous occasions beginning in January 2014, Undercover Officers (UC) of the Baltimore Police Department conducted purchases of varying quantities of cocaine from Cameron Washington in support of the Title III investigation. The intercepted communications over the wiretaps distinctly discussed by the Defendant during the interception period over the Target Telephones confirmed types and quantities of CDS sold by the DTO and confirmed he Defendant's role in the conspiracy.

   The parties stipulate that it was reasonably foreseeable to the Defendant and in furtherance of the conspiracy that at least 28 grams of cocaine base would be distributed during and in the course of the conspiracy.

   The Government's evidence consists of, among other things, the testimony of cooperating witnesses, seizures of narcotics and narcotics paraphernalia, sales of narcotics to undercover officers, and other evidence pursuant to search warrants and electronic surveillance, including the monitoring of telephone conversations occurring over the cellular telephones of the defendant and co-conspirators.

4

b.  **Guideline Stipulations**

The parties stipulate that the base offense level is at least twenty-four pursuant to U.S.S.G. § 2D1.1(c)(8), because during the course of the conspiracy the Defendant conspired to distribute and possess with the intent to distribute at least 28 grams but less than 112 grams of cocaine base.

If the Defendant does not qualify as a Career Offender pursuant to U.S.S.G. § 4B1.1, and, therefore, his base offense level is 24 and his criminal history category is V.

The Government believes that the Defendant qualifies as a Career Offender pursuant to U.S.S.G. § 4B1.1, and, therefore, his base offense level is 34 and his criminal history category is VI.

c.  **Acceptance of Responsibility**

This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty. Based on the forgoing, the parties agree that the Defendant's final adjusted offense level is 31. (If not a Career Offender the Defendant's final adjusted offense level is 21.)

7.  This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute. If the Defendant intends to seek a sentence outside the final advisory guideline range, the Defendant agrees to notify this Office of the factors under 18 U.S.C. § 3553(a) on which the Defendant intends to rely no later than fourteen days prior to the date of sentencing.

<u>Rule 11(c)(1)(C) Plea</u>

8.  The Government and the Defendant agree and stipulate pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of imprisonment in the custody of the Federal Bureau of Prisons for a period of no greater than 84 months imprisonment is the appropriate disposition of this case.

This agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this plea agreement, *either* party may elect to declare the agreement null and void.

Should the Defendant so elect, he may withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5).

## Obligations of the United States Attorney's Office

9. At the time of sentencing, this Office will make a recommendation for a sentence of 84 months imprisonment in the custody of the Federal Bureau of Prisons.

10. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Indictment that this Office has agreed to dismiss at sentencing.

## Waiver of Appeal

11. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

   a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

   b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the Defendant reserves the right to appeal any sentence **greater than 84 months imprisonment**; (ii) and this Office reserves the right to appeal any sentence **less than 84 months imprisonment**.

   c. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

   d. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Public Benefits in Drug Cases

12. The Defendant understands and acknowledges that under 21 U.S.C. §§ 862 and 862(a), a person who has been convicted of a federal offense involving the distribution or possession

of controlled substances may be denied certain federal and state benefits such as loans, grants, or food stamps.

## Obstruction or Other Violations of Law

13. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Court Not a Party

14. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, sentence is imposed by the Court, and the Court is under no obligation to accept this plea agreement. In the event the Court rejects this Rule 11(c)(1)(C) plea agreement, pursuant to Rule 11(c)(5)(C), the Defendant will be informed that he may withdraw his plea. If he persists in the guilty plea thereafter, the Defendant understands that the disposition of the case may be less favorable than that contemplated by this agreement. The Defendant understands that neither this Office, his attorney, nor the Court can make a binding prediction or promise that the Court will accept this agreement. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

15. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Brandis Marsh
Special Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

8-31-16
Date

Scott Pinder

I am Scott Pinder's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

8-31-16
Date

Gerald C. Ruter, Esquire